```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT HUNTINGTON
```

THE CITY OF HUNTINGTON,

    Plaintiff,

v.                                    CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, CARDINAL HEALTH INC.,
and MCKESSON CORPORATION,
GREGORY DONALD CHANEY, M.D.,

    Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

The court has considered defendants' Motion to Remand filed on March 15, 2017, and all matters of record relevant thereto and finds no material difference between this case and <u>The County Commission of McDowell County v. McKesson Corporation, et al.</u>, Civil Action No. 1:17-000946, also pending in this court.

Accordingly, for the reasons set out in this court's opinion in that case, dated July 3, 2017, a copy of which, labeled "Exhibit A" is attached hereto, filed herewith and made a part hereof, plaintiff's Motion to Remand is DENIED.  Since the court lacks jurisdiction over plaintiff's claims against Dr. Gregory Donald Chaney, this action, insofar as it relates to Dr. Chaney, is dismissed without prejudice.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record, unrepresented parties, and to the Circuit Court of Cabell County, West Virginia.

IT IS SO ORDERED this 3rd day of August, 2017.

ENTER:

David A. Faber
Senior United States District Judge

EXHIBIT A

```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT BLUEFIELD
```

**THE COUNTY COMMISSION OF**
**MCDOWELL COUNTY,**

    **Plaintiff,**

**v.**                                **CIVIL ACTION NO. 1:17-00946**

**MCKESSON CORPORATION, et al.,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

This civil action was filed in the Circuit Court of McDowell County, West Virginia, and removed to this court by the defendants who maintain that this court has diversity of citizenship jurisdiction. The plaintiff has filed a motion to remand that is now before the court for decision. (ECF No. 26). For reasons discussed below, the motion to remand is **DENIED**.

### I. Statement of the Case

The nation, in general, and West Virginia, in particular, are experiencing an acute epidemic of drug use and related social problems caused by a flood of opioid pills.[1] The problem is especially acute in Southern West Virginia, including McDowell County. The governing body of McDowell County, the County Commission, filed this civil action in the Circuit Court of McDowell County and named as defendants three corporate

---

[1] For an excellent history and analysis of the problem see Sam Quinones, Dreamland: The True Tale of America's Opiate Epidemic (2015).

distributors of opiates: McKesson Corporation, AmerisourceBergen and Cardinal Health.  All three are citizens and residents of states other than West Virginia.  Named as an additional defendant is Dr. Harold Anthony Cofer, Jr., a citizen and resident of West Virginia.  Defendants, in their notice of removal, assert that Dr. Cofer has been joined, in this action, solely for the purpose of defeating federal jurisdiction.

Plaintiff charges that the corporate defendants knowingly flooded McDowell County with opioids well beyond what was necessary to address pain and other reasons residents of the county could legitimately use the drugs.  Dr. Cofer, it is charged, provided written opioid prescriptions for patients, knowing that the drugs were likely to be abused, diverted or misused.  The county seeks to recover damages to compensate it for sums it has expended and will be forced to expend responding to social problems caused by the opioid epidemic.

## II.  Discussion

A.  *Diversity Jurisdiction and the Possibility of Prejudice*

28 U.S.C. § 1332 confers federal jurisdiction over civil actions when the amount in controversy exceeds $75,000 and there is complete diversity among all plaintiffs and all defendants. The rule of complete diversity appears nowhere in the statute; it stems from the opinion of Chief Justice Marshall in <u>Strawbridge v. Custiss</u>, 7 U.S. (3 Cranch) 267 (1806).  28 U.S.C. § 1441

permits a defendant to remove to federal court from state court any action over which the federal court would have original jurisdiction.

Diversity jurisdiction has been part of federal law since the First Judiciary Act of 1789, but it has always been a subject of controversy.  In Bank of United States v. Deveaux, 5 Cranch 61, 87 (1809), Chief Justice Marshall alluded to "apprehensions" that state courts would engage in local prejudice against out of state litigants.  The possibility of such prejudice is usually offered as the rationale for diversity jurisdiction although other, more circumspect, reasons such as the desire to protect creditors from state legislation favorable to debtors, have been offered.  See Henry J. Friendly, The Historic Basis of Diversity Jurisdiction, 41 Harv. L. Rev. 483, 495-97 (1928).  In the early days of the republic, at least in Virginia, prejudice was palpable.  The state courts there were notoriously hostile to foreign merchants.  Claims were submitted to juries and the juries were given wide latitude to assess the merits of the case and award damages.  In cases where the plaintiff was able to recover a favorable verdict on his principal claim, juries were still permitted to deny interest on the debt, which they often did.  The inability to recover interest meant to the plaintiff,

in many cases, the difference between a profit and a loss on his bargain.[2]

In recent times, crowded federal dockets, a dearth of evidence showing the existence of state court prejudice, and continuing doubts about the utility of diversity jurisdiction have pushed federal courts in the direction of limiting it. Nevertheless, Congress has created diversity jurisdiction and a litigant whose case comes within it has a right to be in federal court. As the Supreme Court has said: "[T]he Federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts of the protection of their rights in those tribunals." In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig., 2016 WL 7339811 at *3 fn.4 (D.S.C. Oct. 24, 2016) (quoting Alabama Great S. Ry. Co. v. Thompson, 200 U.S. 206, 218 (1906)). Therefore, if diversity jurisdiction is to be assigned to oblivion, it is Congress, not the courts who should send it there. Here, where the opioid epidemic is pervasive and egregious, there is at least a possibility of prejudice to the defendants at the hands of a jury drawn exclusively from the very county that is the plaintiff in this suit. A federal jury casts a wider net and is drawn from a division that comprises several

---

[2] F. Thornton Miller, Juries and Judges Versus the Law: Virginia's Provincial Legal Perspective, 1783-1828, at 34-37 (1994).

4

counties.  All may have an opioid problem, but not one that is specific to the plaintiff county.

Normally, the existence of diversity jurisdiction, or the lack thereof, is to be determined from the face of the well-pleaded complaint.  See Wyatt v. Charleston Area Med. Ctr., 651 F. Supp. 2d 492, 496 (S.D.W. Va. 2009).  Two district doctrines, however, permit the court to disregard the citizenship of improperly joined parties.  See In re Lipitor, 2016 WL 7339811 at *1; Wyatt, 651 F. Supp.2d at 496.  Judge Goodwin succinctly describes these doctrines in Wyatt at page 496 as follows:

> Fraudulent joinder and fraudulent misjoinder are two distinct legal doctrines that provide exceptions to the well-pled complaint rule as it applies to removal based on diversity jurisdiction by allowing courts to disregard the citizenship of certain parties. Fraudulent joinder is applicable where a defendant seeking removal argues that other defendants were joined when there is no possible cause of action against those defendants or where the complaint pled fraudulent facts.  See Ashworth, 395 F. Supp.2d at 403. Fraudulent misjoinder, on the other hand, is an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal.  See id. at 409-10.

Wyatt, 651 F. Supp.2d at 496.

B.  *Fraudulent Joinder*[3]

The doctrine of fraudulent joinder is an exception to the well-pleaded complaint rule.  It requires the court to disregard the citizenship of a party who is deemed to have been fraudulently joined.  In order to establish fraudulent joinder in a particular case, a removing defendant must show either (1) there is no possibility that the plaintiff can establish a cause of action against the removing defendant, or (2) that there has been outright fraud in plaintiff's pleading of jurisdictional facts.  See Marshall v. Manville Sales Corp., 6 F.3d 229, 232

---

[3]  Plaintiff contends that the removing defendants have waived any argument that Dr. Cofer was fraudulently joined by failing to include it in the Notice of Removal.  However, plaintiff's argument is without merit because the Notice of Removal clearly alleges that Dr. Cofer's

> citizenship should be disregarded because he was fraudulently joined solely to defeat diversity.  See Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015) ("[T]he fraudulent joinder doctrine `effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants and thereby retain jurisdiction.")(quoting Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)).  "`Fraudulent joinder' is a term of art, [and] it does not reflect on the integrity of plaintiff or counsel. . . ."  AIDS Counseling & Testing Ctrs. v. Grp. W. Television, Inc., 903 F.2d 1000, 1003 (4th Cir. 1990).

Notice of Removal, at 3-4 (ECF No. 1).  Furthermore, the court finds that Woods v. Crane Co., 764 F.3d 316 (4th Cir. 2014), is distinguishable because defendants herein are not asserting a completely new ground for jurisdiction but, rather, are merely providing additional reasons in support of their argument that Dr. Cofer has been fraudulently joined in this case and, therefore, diversity jurisdiction exists.

(4th Cir. 1993); Ashworth v. Albers Med., Inc., 395 F. Supp.2d 395, 402-03 (S.D.W. Va. 2005).

Very few fraudulent joinder cases involve actual fraud. Most turn upon the "no possibility of recovery" standard. Courts have applied this rule in the extreme. If the plaintiff demonstrates a mere "glimmer of hope" that its claim will succeed, the jurisdictional inquiry must end and the case be remanded. Hartley v. CSX Transp., Inc., 187 F.3d 422, 424-26 (4th Cir. 1999).

This is the rare case that fits the "no possibility of recovery" rubric. West Virginia's Medical Professional Liability Act (WVMPLA), West Virginia Code § 55-7B-6, imposes a series of procedural prerequisites for filing a medical malpractice claim. The plaintiff, in such a case, is required, at least thirty days prior to filing suit, to serve notice on the defendant of his intention to bring suit. The notice must contain a "screening certificate of merit" executed under oath by a qualified expert. If this requirement is not met, the case must be dismissed. See Stanley v. United States, 321 F. Supp.2d 805, 807-09 (N.D.W. Va. 2004). The recent decision of the United States Court of Appeals for the Fifth Circuit in Flagg v. Stryker Corp., 819 F.3d 132, 137-38 (5th Cir. 2016) (en banc), is representative of several cases that hold such prerequisites to malpractice suits are jurisdictional. See also Robinson v. Mon, Civil Action No. 2:13-13686, 2014 WL 4161965, *8 (S.D.W. Va. Aug. 19, 2014) ("The pre-

7

suit notification and filing of a screening certificate of merit is jurisdictional, and dismissal for failure to comply is mandatory.")

It is abundantly clear that the plaintiff failed to comply with the requirements of W. Va. Code § 55-7B-6 before joining Dr. Cofer in this civil action. The claim against Dr. Cofer is one for medical malpractice in that he allegedly "provided written opioid prescriptions for patients despite knowing that the opioids were likely to be abused, diverted or misused." Complaint at ¶ 43. It can hardly be questioned that writing prescriptions for controlled medication are acts done within the context of rendering health care services.

Accordingly, there is no possibility of recovery by the plaintiff against Dr. Cofer in this civil action as it presently stands. The fraudulent joinder doctrine applies and there is federal diversity jurisdiction over plaintiff's claims against the remaining defendants.

C. *Fraudulent Misjoinder*

Fraudulent joinder assumes that the claim against the non-diverse defendant is sufficiently related to the claims against the diverse defendant to have been properly joined in the same lawsuit. Such is not the case with the related, but distinct, doctrine of fraudulent misjoinder. Here, the inquiry is whether claims against the diverse and non-diverse defendants are sufficiently related to be properly joined in a single case.

Caselaw developing the fraudulent misjoinder doctrine stems from <u>Tapscott v. MS Dealer Serv. Corp.</u>, 77 F.3d 1353 (11th Cir. 1996). There, in a class action for violations of Alabama law arising from the sale of service contracts on automobiles, the court held that misjoinder of a diverse defendant was so egregious as to amount to fraudulent joinder. While the court did not expressly adopt fraudulent misjoinder as a separate legal doctrine, it rejected the argument, advanced by the plaintiff, that a misjoinder, no matter how egregious, can never amount to fraudulent joinder. 77 F.3d at 1360.

Later, in <u>In re Prempro Prods. Liab. Litig.</u>, 591 F.3d 613, 620 (8th Cir. 2010), a United States Court of Appeals drew a distinction between fraudulent joinder and fraudulent misjoinder and adopted fraudulent misjoinder as a "somewhat different and novel exception to the complete diversity rule. . . ." The court observed that two other circuits, the Fifth and the Ninth, had acknowledged the rule without expressly adopting it. <u>See</u> <u>id.</u> fn.4 (citing <u>In re Benjamin Moore & Co.</u>, 309 F.3d 296, 630-31 (5th Cir. 2002) and <u>California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.</u>, 24 F. App'x 727, 729 (9th Cir. 2001)).

The Fourth Circuit Court of Appeals has apparently neither accepted nor rejected the doctrine, but a number of district courts in our circuit have considered it. While these courts have split on the issue, the weight of authority accepts the doctrine. The cases are discussed in <u>In re Lipitor</u>, <u>supra</u>. This

9

court concludes that it should follow the majority of these cases and apply the doctrine here.

Courts have held that propriety of joinder of the claims is to be determined by state law. In West Virginia the rule of civil procedure governing joinder is virtually identical to the corresponding federal rule – the rules even bear the same number, Rule 20. As a consequence, cases decided under Federal Rule of Civil Procedure 20 are helpful in deciding whether the claims at issue may be properly joined together in a single suit. See State ex re. Energy Corporation of America v. Marks, 774 S.E.2d 546, 550-51 (W. Va. 2015).

Under Federal Rule 20 and the corresponding West Virginia rule, the claims, to be properly joined, must (1) arise out of the same transaction or occurrence, and (2) present a question of law or fact common to all defendants. See Ashworth, 395 F. Supp.2d at 411; Marks, 774 S.E. 2d at 550.

Here, the removing defendants assert that the claims against Dr. Cofer arise out of different transactions, involve different evidence, and rest on different legal theories than the claims against the diverse defendants. This court agrees and concludes that the claims may not be properly joined. Consequently, the fraudulent misjoinder doctrine applies and compels denial of the motion to remand.

The In re Lipitor case, supra, a fraudulent misjoinder case, applied the same heightened standard that applies to a case of

10

fraudulent joinder. See In re Lipitor, 2016 WL 7339811, at *6. There, the court held that to establish fraudulent misjoinder, the removing party was required to show either outright fraud, or that there was no possibility that the plaintiff would be able to join the diverse and non-diverse claims. See id. This court respectfully views this approach as outside the mainstream of Fourth Circuit jurisprudence and declines to follow it. As Judge Goodwin observed in Wyatt, 651 F. Supp.2d at 496:

> The prevailing standard is whether there is a "reasonable possibility that a state court would find that [the plaintiffs'] claims against [one set of defendants] were properly joined with [the] claims against the other defendants[.]"

The Wyatt case was a medical malpractice action against health care providers and doctors for alleged negligence in installing a medical device. The plaintiffs joined the manufacturers of the device alleging negligence and strict liability in its manufacture. The court concluded that the claims arose out of the same occurrence – the plaintiff's surgery "and the after effects of that surgery." 651 F. Supp.2d at 498.

This case, in contrast to Wyatt, is more akin to Hughes v. Sears, Roebuck and Co., Civil Action No. 2:09-CV-93, 2009 WL 2877424 (N.D.W. Va. Sept. 3, 2009). Hughes involved an injury on a treadmill. See id. at *1. The plaintiff sued Icon, the manufacturer of the treadmill, and Sears, from whom she bought the treadmill. See id. Plaintiff claimed the treadmill malfunctioned, causing her to lose her footing and be thrown off.

11

See id. Later, the same day, an emergency room physician, joined as a co-defendant, allegedly misdiagnosed her injuries. See id. Judge Bailey in Hughes distinguished Wyatt as follows:

> The essence of the claims against Sears and Icon arise from the design, testing, manufacture and sale of a consumer product from which Ms. Hughes fell and eventually sought treatment from Dr. Logar who, then, allegedly provided a misdiagnosis. Unlike the doctor in Wyatt . . ., Dr. Logar had no control over the allegedly defective product. Thus, here, there is no such bridge to provide a persuasive argument that the medical malpractice and products liability claims arise out of the same transaction or occurrence. Moreover, . . . the evidence supporting these claims will be markedly different.

2009 WL 2877424 at *6.

In this case, the connection, if any, between the actions of the corporate defendants, who allegedly flooded the market with opioids, and Dr. Cofer, who prescribed some of them, is far more attenuated than any connection between the manufacturers and seller of the treadmill in Hughes and the subsequent misdiagnosis by the treating physician.

### III. Conclusion

Since there is no possibility of recovery against Dr. Cofer in this case, he has been fraudulently joined. Additionally, the court finds no common questions of law or fact in plaintiff's claims against the corporate defendants and the claims against Dr. Cofer. The cases against each are separate and distinct. Accordingly, Dr. Cofer has also been fraudulently misjoined. The Motion to Remand is therefore **DENIED**. Since the court lacks

12

jurisdiction over plaintiff's claims against Dr. Cofer, this action, insofar as it relates to Dr. Cofer, is dismissed without prejudice.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record, unrepresented parties, and to the Circuit Court of McDowell County.

**IT IS SO ORDERED** this 3rd day of July, 2017.

ENTER:

*David A. Faber*
David A. Faber
Senior United States District Judge